CV-10 0993

U.S. DISTRICT COURT E.D.N.Y.

★ MAR 0 5 2010 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JAY SILVERSTEIN,

        Plaintiff,

    -against-

LAWRENCE UNION FREE SCHOOL
DISTRICT NUMBER 15, the BOARD OF
EDUCATION OF THE LAWRENCE UNION
FREE SCHOOL DISTRICT NUMBER 15,
MURRAY FORMAN, DAVID SUSSMAN,
ASHER MANSDORF, MICHAEL HATTEN,
URI KAUFMAN, NAHUM MARCUS, JOHN
FITZSIMONS, Individually and in their Official
Capacities,

        Defendants.
--------------------------------------------------------X

**COMPLAINT**

Jury Trial Demanded

FEUERSTEIN, S

WALL, M.J.

    Plaintiff, JAY SILVERSTEIN, through his attorneys, LEEDS MORELLI & BROWN,

P.C., alleges upon knowledge as to himself and his own actions, and upon information and belief

as to all other matters, as follows:

### JURISDICTION AND VENUE

1.    This action is brought pursuant to 42 U.S.C. § 1983, to redress Defendants' adverse

    employment actions against Plaintiff in the terms, conditions and privileges of employment,

    as well as deprivation by Defendants, under the policies, ordinances, custom and usage of

    all rights, privileges and immunities secured to Plaintiff by the First and Fourteenth

    Amendments to the Constitution of the United States and all the laws and statutes thereunder.

1

2.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331. Supplemental jurisdiction of the Court is invoked under 28 U.S.C. §1367 over the state law causes of action.

3.  Venue is proper pursuant to 28 U.S.C. §1391.

## PARTIES

4.  Plaintiff, Jay Silverstein ("Silverstein"), was and still is a resident of Atlantic Beach, State of New York.

5.  Defendant, the Lawrence Union Free School District Number 15 (the "District") was, and still is, a public school district and a municipal corporation, organized and existing under the laws of the State of New York, and a recipient of federal and state financial assistance.

6.  Defendant, the Board of Education of the Lawrence Union Free School District Number 15 ("Board" or "Board of Education") was and is the policy making body of the District, and a municipal corporation organized and existing under the laws of the State of New York.

7.  John Fitzsimons ("Fitzsimons") was during relevant times, an individual employed by the District as Superintendent, and therefore, was responsible for its maintenance and operation, including but not limited to, the hiring, firing, promotion and discipline of employees and all other employment related issues. Additionally, Defendant Fitzsimons was a policymaker

2

for the District, and charged with the responsibility of insuring that its employees were not subjected to unlawful retaliation.  He was also responsible for properly training and supervising employees with respect to employment issues.

8.      Defendant Murray Forman ("Forman") was and is an elected Trustee of the Board of Education, and is currently serving as the President of the Board and is therefore a policy maker for the District.

9.      Defendant David Sussman ("Sussman") was and is an elected Trustee of the Board of Education and is therefore a policy maker for the District.

10.     Defendant Uri Kaufman ("Kaufman") was and is an elected Trustee of the Board of Education and is therefore a policy maker for the District.

11.     Defendant Asher Mansdorf ("Mansdorf") was and is an elected Trustee of the Board of Education and was at the time of the events described, and continues to, serve as the Vice-President of the Board and is therefore a policy maker for the District.

12.     Defendant Michael Hatten ("Hatten") was an elected Trustee of the Board of Education and was therefore a policy maker for the District.  Hatten did not run for reelection in 2009, and his term of office expired in or about July 2009.

13.    Defendant Nahum Marcus ("Marcus") was and is an elected Trustee of the Board of
       Education and is therefore a policy maker for the District.

## FACTS

14.    Plaintiff, Silverstein, entered the employment of the District on July 1, 2005, as the
       Assistant Principal of the District high school.

15.    On September 1, 2009, Silverstein became Director of Guidance and Support Services for
       Lawrence Public Schools.

16.    On November 20, 2008, Superintendent Fitzsimons, asked Silverstein when his tenure
       was approaching.  Silverstein responded that he would be considered for tenure at the end
       of the 2009/10 school year.  Fitzsimons expressed that he was pleased that Silverstein's
       tenure would not be considered for another year because he was concerned as to whether
       Silverstein would  receive tenure at that time.

17.    During the same conversation, Fitzsimons told Silverstein that a member of the Board
       had accused Silverstein of being "anti-Orthodox," and against the Orthodox Jewish
       members of the Board.  Fitzsimons also indicated that several members of the Board were
       unhappy with Silverstein's support for a group of non-Orthodox community members
       who opposed many of the actions of the Board, which some of these non-Orthodox
       community members claimed were designed to benefit the Orthodox community.

4

18.    Further, Fitzsimons advised Silverstein to become friendlier with the Board, and to become especially friendly with Anette Szafranski ("Szafranski"), the Director of Pupil Personal Services, who, according to Fitzsimons, is a member of the Orthodox Jewish faith, attended Schul with the Orthodox Jewish members of the Board, and has influence over the Board.

19.    On November 22, 2008, Silverstein asked Fitzsimons why he was perceived as being "anti-Orthodox." In front of Assistant Superintendent Vicki Karant ("Karant"), Fitzsimons said that Silverstein was viewed as anti-Orthodox because he was close friends with Andrew Levey ("Levey").

20.    Silverstein grew up with Levey; the pair have known each other for over thirty years and are close friends. They went to high school together and worked as life-guards together as teenagers. Silverstein and Levey continue to have a close personal association, maintaining their friendship from childhood into their adulthood. The families of both men have also become close from years of extensive social interaction, and they and their families have near daily contact. For the last twelve years they have lived a mere five houses away from each other. Levey is one of the few close friendships from Silverstein's childhood that Silverstein continues to maintain.

21.    Levey has been an outspoken opponent of Board, has played a key role in organizing a group of residents which has criticized many of the Board's actions, and has voiced

concern that some of the Board's actions were designed to benefit the Orthodox members of the community, while depleting funds available for the public schools.

22.     Additionally, Levey is a Plaintiff in a matter entitled <u>Incantalupo, et al. v. Lawrence Union Free School District, et al.</u>, Docket No. 09-cv-3342 (JS)(ETB) (Second Cir. Appellate Docket No. 09-3994), wherein Levey and his co-plaintiffs argue that the Board (primarily composed of Orthodox Jewish Board Members who send their children to private yeshivas) reduced public school services in order to increase funds available to provide services to yeshivas, while implementing tax breaks to make it more feasible for Orthodox residents to send their children to yeshivas.  The lawsuit alleges violations of the First and Fourteenth Amendments to the United States Constitution.

23.     On April 30, 2009, despite Silverstein's overwhelmingly positive evaluations, Fitzsimons told Silverstein that he was worried that Silverstein may not receive tenure.

24.     Silverstein asked if the concern about tenure was related to his job performance and Fitzsimons responded that it was not.

25.     Fitzsimons said that his concern stemmed from Silverstein's close friendship with Levey, as well as where Silverstein lived.

26.   Silverstein lived in Atlantic Beach, which was and is perceived to be a non-Orthodox community and, in fact, has a lower concentration of Orthodox residents than other areas of the District.

27.   Residents of Atlantic Beach have been central figures in the organized opposition to many of the items on the Board's agenda, including items which were claimed to be designed to benefit the Orthodox members of the community at the expense of the public schools.

28.   On July 17, 2009, Fitzsimons told Silverstein that the Board would was not inclined to grant Silverstein tenure when it came due.

29.   Silverstein was offered a new position, with a new and extended tenure period, titled Supervisor of Pupil Personal Services.

30.   Fitzsimons specifically told Silverstein that this was being offered because the Board wanted to get rid of Silverstein entirely, and refused to tenure him, but the only way Fitzsimons could get them to allow Silverstein to remain employed, was under an entirely new tenure period, with different responsibilities, and if he was reporting directly to Szafranski.

7

31.   The Supervisor of Pupil Personal Services position offered to Silverstein, constituted both a demotion in title and in rank, as under the new position Silverstein would no longer be a director and would be reporting to Szafranski, rather than to the Superintendent and Assistant Superintendent.

32.   The new position combined positions previously held by two employees, and would have nearly doubled Silverstein's responsibilities, a task which Silverstein could not properly accomplish singlehandedly.

33.   Silverstein made a number of suggestions regarding a way for him to accept the position, including, but not limited to splitting the job duties.  Fitzsimons said that Silverstein's suggestions made sense, but he indicated that it would not be allowed.

34.   On July 20, 2009, Fitzsimons told Silverstein that he would either have to accept or refuse the new position by the next day.  During that telephone conversation, Silverstein mentioned that the new position was a demotion.  Fitzsimons agreed, but expressed that the demotion would be safer for Silverstein given the Board's negative feelings about him.

35.   Also on July 20, 2009, Fitzsimons told Silverstein that he had been receiving calls from Board members alleging that Silverstein was inciting the community against the Board.

36.   In the context of the political situation in the community at this time, this was a reference to the ongoing battle between the Board and a faction of residents who claimed that the Board had harmed the District by closing Elementary School Number 6 in Woodmere.

37.   It was also at this time when Levey and others were preparing to file the Incantalupo lawsuit, which was actually filed on August 4, 2009, along with an Order to Show cause seeking to prevent the Board from closing this particular school.

38.   In or around the end of July 2009, Silverstein received a letter extending his pre-tenure probationary period for an additional three years, for a total of seven years of probation.

39.   On July 28, 2009, Silverstein met with Fitzsimons.  Silverstein complained that the tasks associated with the new position could not be properly performed by one person.

40.   During the July 28, 2009 conversation, Fitzsimons again stated that the Board was targeting Silverstein because of Silverstein's association with Levey.  Fitzsimons also said that he was unable to change the Board's viewpoint.

41.   During the July 28, 2009 conversation, Fitzsimons stated that he did not want raise the issue of Silverstein's tenure with the Board because he felt it would be denied.

42. On July 29, 2009, Silverstein refused to accept the Supervisor of Pupil Personal Services position. Fitzsimons agreed to extend Silverstein's employment to October 31, 2009 to give Silverstein time to find alternative employment.

43. On August 19, 2009, Silverstein received a letter from Fitzsimons, claiming to accept Silverstein's resignation. However, Silverstein never offered his resignation.

44. On September 17, 2009 Silverstein was told that he must resign or he would be terminated.

45. Silverstein was asked to sign a general release in exchange for having his position abolished, as opposed to him being terminated.

46. On September 17, 2009, Silverstein received two letters from Fitzsimons, one stated that Fitzsimons was recommending to the Board that Siverstein be terminated, the second letter stated that Fitzsimons was recommending to the Board that Silverstein's position be abolished.

47. On October 19, 2009, Silverstein was relieved of his duties as Director of Guidance and Support Service.

48. He was "reassigned" to a desk job at central office, allegedly to be assigned undefined "projects."

49. On October 22, 2009, Silverstein received a letter notifying that him that his services shall be discontinued at the close of business on November 18, 2009.

50. On October 23, 2009, Fitzsimons again referenced that the Board perceived Silverstein as "anti-Orthodox." Fitzsimons also mentioned that the Board perceived him as supportive of Levey and Levey's political group. Fitzsimons indicated that these are the reasons why the Board would not grant him tenure.

51. During the October 23, 2009 conversation, Fitzsimons specifically stated that the reason why the Board would not grant him tenure was not performance related.

52. On November 6, 2009, Silverstein's employment with the District was terminated.

53. By reason of Defendants' violation of Plaintiff's rights, Plaintiff has suffered a loss of monetary benefits associated with his employment in addition to suffering physical, emotional and other damages.

## CLAIMS FOR RELIEF

54.   Defendants acted under color of state law.  As such, Defendants have violated Plaintiff's

rights under the United States Constitution including his (a) Freedom of Intimate

Association, (b) Freedom of Expressive Association, (c) Freedom of Speech, and (d) right

to equal protection of the laws.


55.   Defendants subjected plaintiff to the following adverse actions: (a) advising him that he

would be denied tenure, (b) extending his tenure period, (c) demanding he accept a

demotion, (d) removing him from his job duties and assigning him to work an undefined

desk job, (e) recommending his termination, and (f) terminating his employment.


56.   The Defendants have, while acting under color of state law, deprived Plaintiff of his

constitutional rights, as secured by the First and Fourteenth Amendments to the United

States Constitution, in violation of 42 U.S.C. § 1983.  Defendants intentionally

committed, condoned or were deliberately indifferent to the aforementioned violations of

Plaintiff's constitutional rights.


WHEREFORE, Plaintiff demands judgment against Defendants, for all compensatory,

emotional, physical, and punitive damages (where applicable), lost pay, front pay, reinstatement,

injunctive relief, and any other damages permitted by law.  It is further requested that this Court

grant reasonable attorneys' fees and the costs and disbursements of this action and any other

relief to which Plaintiff is entitled.  Plaintiff demands a trial by jury.

Dated: Carle Place, New York
      February 24, 2010

                                          Respectfully submitted,

                                          LEEDS, MORELLI & BROWN
                                          *Attorneys for Plaintiffs*
                                          One Old Country Road
                                          Carle Place, N.Y. 11514
                                          (516) 873-9550

                                          _____
                                          RICK OSTROVE (RO-7248)