UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JAY SILVERSTEIN,

               Plaintiff(s),

       -against-

LAWRENCE UNION FREE SCHOOL
DISTRICT NUMBER 15, the BOARD OF
EDUCATION OF THE LAWRENCE
UNION FREE SCHOOL DISTRICT
NUMBER 15, MURRAY FORMAN,
DAVID SUSSMAN, ASHER MANSDORF,
MICHAEL HATTEN, URI KAUFMAN,
NAHUM MARCUS, and JOHN FITZSIMONS,
Individually and in their Official Capacities,

               Defendant(s).
--------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
CV 10-993 (SJF) (WDW)

**WILLIAM D. WALL, United States Magistrate Judge:**

     Before the court on referral from District Judge Feuerstein are (1) a motion to dismiss by

defendant John Fitzsimons (DE[26[1]]); a motion to dismiss by the District and Board defendants

("the Board defendants")(DE[19[2]]); and a cross motion to amend by the plaintiff (DE[25[3]]).  I

recommend that the defendants' motions to dismiss be granted and that the plaintiff's motion to

amend be granted in part and denied in part, disallowing the claims based on intimate association

and equal protection and finding the free speech and expressive association claims to be

---

    [1]Fitzsimon's motion papers have been electronically filed in duplicate, so that docket
entries 26, 27, 28 and 289 are also filed as 30, 31, 32 and 33.

    [2]The Board defendants' Reply Memorandum of Law in Further Support of Defendants'
Motion to Dismiss and in Opposition to Plaintiff's Cross-Motion for Leave to Amend the
Amended Complaint, a copy of which has been submitted in hard copy, has not been
electronically filed.  The movants are directed to electronically file it upon receipt of this Report
& Recommendation.

    [3]No Reply Memorandum has been electronically filed by the plaintiff in support of his
motion nor is the court in possession of a hard copy of such document.

duplicative. Thus, the claims alleging violations based on free speech (or expressive association) and political affiliation should go forward.

## BACKGROUND

The plaintiff, Jay Silverstein, was hired by defendant Lawrence Union Free School District Number 15 ("the District") as Assistant Principal of Lawrence High School in 2005. Am. Compl., DE[8], ¶14. On September 1, 2007[4], he became the District's Director of Guidance and Support Services. *Id*., ¶15. On November 20, 2008, defendant Fitzsimons asked Silverstein when his tenure would be considered. *Id*. ¶16. Silverstein responded that he would be considered at the end of the 2009/10 school year. *Id*. Silverstein alleges that Fitzsimons told Silverstein that a member of the defendant Board had accused Silverstein of being "anti-Orthodox" and opposed to Orthodox members of the defendant Board. This comment and the overall complaint must be viewed in the context of tensions in the Lawrence School District community, of which I take judicial notice for the purposes of these motions.

That context has been set forth by District Judge Seybert in another case against a number of the defendants in this action, *Incantalupo v. Lawrence U.F.S.D.* Judge Seybert noted that although at one time Lawrence had a demographically diverse population, in the 1980's the balance began to shift as a result of an influx of Orthodox Jews into the community. 652 F. Supp. 2d 314, 317 (E.D.N.Y. 2009), *aff'd*, 380 Fed. Appx. 59 (2d Cir. 2009)[5]. A significant

---

[4] Silverstein alleges this date as Sept. 1, 2009, but, as the defendants point out, the actual date is 2007. *See* DE[21], Def. Mem. in Supp. at 3, n.3; DE[28], Fitzsimons Mem. in Supp. at 3, n.1.

[5] I recognize that some of the alleged facts regarding Lawrence's Orthodox population set out in Judge Seybert's decision were "begrudgingly accepted as true" for purposes of the motion to dismiss. 652 F. Supp. 2d at 318 n.2. The facts I repeat here constitute only a barebones description of the school situation in Lawrence necessary to convey context.

number of Lawrence's children attend yeshivas and this has led to disagreements as to how the public schools should be run. Judge Seybert noted that a number of the members of the Lawrence School Board who appeared as defendants in the Incantalupo matter and who are also defendants in this action, including defendants Kaufman, Hatten and Mansdorf, are Orthodox Jews. Other defendants herein may also be Orthodox, but the Amended Complaint does not allege so. It suffices to note that a high degree of tension is often present in regard to decisions about how to run the Lawrence schools and that Orthodox and non-Orthodox factions exist.

Silverstein asserts that Fitzsimons also told him that several members of the Board were unhappy with Silverstein's support for a group of non-Orthodox community members who opposed Board decisions. Am. Compl., ¶17. Fitzsimons allegedly recommended that Silverstein become friendlier with a non-party named Anette Szafranski, the District's Director of Pupil Personnel[6] Services, an Orthodox woman with influence over the Board. *Id*. ¶18. Silverstein says that on November 22, 2008, he asked Fitzsimons why he was perceived as being "anti-Orthodox," and Fitzsimons said, in the presence of Assistant Superintendent Vicki Karant, that it was because of Silverstein's close friendship with Andrew Levey. *Id.* ¶19.

Silverstein reports that he grew up with Levey, has known him for more than 30 years, went to high school with him and worked with him as a life guard as a teenager. *Id.* ¶20. He states that the Silverstein and Levey families have a close personal association, live five houses away from each other, and have near daily contact. According to Silverstein, his friendship with Levey is the only close friendship from childhood that he continues to maintain. *Id.* Silverstein

---

[6]The plaintiff's papers use the phrase "Pupil Personal Services" rather than "Pupil Personnel Services." I assume that this is a typo.

describes Levey as an outspoken opponent of the Board who has played a key role in organizing a group of residents who have criticized the Board's actions, taking the position that some of those actions were designed to benefit Orthodox members of the community, while depleting funds for the public schools. Id. at ¶21. Levey was a plaintiff in the Incantalupo action.

In opposition to the motions to dismiss, Silverstein reports a number of facts that he wishes to add to his proposed Second Amended Complaint, but that are not alleged in the Amended Complaint. *See* DE[24], Silverstein Aff., & DE[23], Ex. A, Prop. Second Am. Compl., ¶¶23-26. He states that starting in or around March 2009 and through the May 2009 School Board election, he supported two non-Orthodox challengers running against Orthodox candidates for the Board of Education - Barry Ringelheim and John Kindler - who opposed the closing of elementary school 6. He attended campaign meetings, distributed political flyers, and spoke to community members on behalf of the non-Orthodox candidates. He further reports that he attended a Board Meeting in April 2009 as a concerned member of the community, and many attendees spoke out against the Board's actions, although he does not say that he spoke at the meeting. The next Saturday he met defendant Mansdorf outside temple and they discussed the political situation in the community and the closing of elementary school number 6. Silverstein suggested closing schools 4 or 5 instead of 6, a position he says coincides with that of a political faction comprised of non-Orthodox residents. Silverstein notes that he spoke in his capacity as a community member and not as a District employee. The next day, a Sunday, Silverstein attended a "campaign/community meeting" in Atlantic Beach. He claims that he regularly attended such meetings to show support for non-Orthodox Board candidates who opposed the closing of school number 6. At the meeting, he reported his discussion with Mansdorf about closing a different

school, and spoke with Levey, who suggested that if Silverstein could broker that deal, Levey would garner support for it. These facts are not considered in the motion to dismiss analysis, because they are not alleged in the Amended Complaint. They are considered regarding the motion to amend.

On April 30, 2009, Silverstein alleges that Fitzsimons told him that he was worried that Silverstein would not get tenure, but that the concern was not related to job performance, but to Silverstein's friendship with Levey and where Silverstein lived. Am. Compl., ¶¶23, 24 & 25. Silverstein lived in Atlantic Beach, which he asserts is perceived to be a non-Orthodox community and which does in fact have a lower concentration of Orthodox residents than other parts of the District. *Id.* ¶26.

The Amended Complaint alleges that, on July 17, 2009, Fitzsimons told Silverstein that the Board was not inclined to grant him tenure when it came due. *Id.*, ¶28. He was offered a new position, with a new and extended tenure period, called Supervisor of Pupil Personnel Services. Silverstein construes this as an adverse employment action, describing the new position as a demotion in title and rank, noting that under the new position he would no longer have been a director and would have reported to Szafranski rather than to the Superintendent and Assistant Superintendent. *Id.* ¶¶28 & 29. The new position, he asserts, would have combined two previous jobs and doubled his responsibilities. He suggested some changes to the position that would have allowed him to accept it, including splitting job duties. Fitzsimons, he states, said that the suggestions made sense but would not be allowed by the Board. *Id.* ¶¶31-33. He reports that he was told by Fitzsimons on July 20, 2009 that he would have to accept or reject the new position by the following day, and that during the conversation Fitzsimons called the new

job a demotion that would be "safer" for Silverstein given the Board's negative feelings about him. *Id*. ¶¶34. Silverstein says that Fitzsimons also told him at that time that Board members had been calling Fitzsimons alleging that Silverstein was inciting the community against the Board. *Id*. ¶35. This happened during the time when the community was embroiled in a dispute about the closing of school number 6 and when Levey and others were preparing to file the Incantalupo lawsuit. *Id*. ¶37.

Around the end of July 2009, Silverstein alleges, he received a letter extending his pre-tenure probationary period for three years, for a total of seven years of probation. *Id*. ¶38; DE[20], Stern Decl., Ex. B[7]. The Board defendants say that the letter did not extend a probationary period for the job that Silverstein then held, but was an offer of employment as Supervisor of Pupil Personnel Services with a salary of $137,200 and a tenure period extending to August 2012. DE[21] at 5. It was not, they maintain, an extension of his tenure period at his current position because that position had been eliminated along with other administrative positions for budgetary reasons. *Id.* The new position offered the same salary and benefits as his former position. Silverstein met with Fitzsimons on July 28, 2009 and complained that the new job could not be done by one person. Fitzsimons allegedly told Silverstein that the Board was targeting him because of his association with Levey, that Fitzsimons could not change the Board's viewpoint, and that he did not want to raise the issue of Silverstein's tenure because he thought it would be denied. *Id.* ¶¶39-41.

---

[7]Silverstein did not annex any exhibits to his Amended Complaint. The defendants, however, have included as motion exhibits several of the letters referenced in the Amended Complaint because they are "integral to the complaint." DE[21], Mem. in Opp. at 5, n. 4 (citing *Holmes v. Poskanzer,* 2009 WL 2171326 (2d Cir. July 21, 2009). I agree that they are appropriately submitted and considered on these motions.

On July 29, 2009, Silverstein refused to accept the position of Supervisor of Pupil Personnel Services.  *Id.* ¶42.  He sent a letter to the Board, acknowledging that his former position as Director of Guidance and Support Services had been eliminated and noting that he knew of "no other district on Long Island that operates without a district-wide Director of Guidance or a High School Chairperson whose primary responsibility is the oversight of the guidance department."  He asked that his employment be continued through October 31, 2009 to allow him to find new employment. Stern Decl., DE[20], Ex. C.  He received a letter from Fitzsimons on August 19, 2009, purporting to accept Silverstein's resignation, but Silverstein maintains that he never tendered a resignation.  Silverstein says that he subsequently received two letters from Fitzsimons, one recommending that Silverstein be terminated and one recommending that Silverstein's position as Director of Guidance be abolished.  Am. Compl. ¶46; Arntsen Decl. Ex. C.  Silverstein says that he was asked to sign a general release in exchange for his position being abolished, as opposed to his being terminated.  Am. Compl. ¶45.

Silverstein alleges that, on October 19, 2009, he was relieved of his duties as Director of Guidance and Support Service and "reassigned" to a desk job at central office, to be assigned unspecified "projects."  *Id*. ¶¶47 & 48.  On October 22, 2009, Silverstein received a letter notifying him that his services would be discontinued at the close of business on November 18, 2009.  *Id*. ¶49; Arntsen Decl., Ex. C.  The defendants note that the October 22nd letter informed Silverstein that the Director of Guidance position was abolished for "reasons of economy and efficiency" and that he would be placed on a preferred eligibility list for seven years if the position was reopened.  DE[21] at 5-6.  On October 23, 2009, Fitzsimons allegedly again told Silverstein that the Board perceived Silverstein as "anti-Orthodox" and perceived him as

supportive of Levey and Levey's political group and that those were the reasons they would not grant him tenure, not that his job performance was unsatisfactory. *Id*. ¶¶50 & 51. Silverstein alleges that his employment with the District was terminated on November 2, 2009. *Id*. ¶52. He initiated this lawsuit on March 5, 2010, asserting claims against the District, the Board, and current and former members of the Board in both their individual and official capacities.

In the Amended Complaint, Silverstein alleges that all defendants acted under color of state law and violated his First and Fourteenth Amendment constitutional rights to (1) freedom of intimate association; (2) freedom of expressive association; (3) freedom of speech; (4) the right to equal protection; and (5) the right to be free from discrimination on the basis of his political affiliations and/or perceived political affiliations. Am. Compl., ¶54. The defendants have moved pursuant to Rule 12 to dismiss all of the claims. The plaintiff opposes that motion and has made a counter motion to amend to add new factual allegations, which is opposed by all defendants. I first address the motions to dismiss.

## DISCUSSION

### The Motions to Dismiss

**Standard For Motion To Dismiss**:

Rule 8 of the Federal Rules of Civil Procedure requires that a civil complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8 (a)(2). "Specific facts are not necessary; the statement need only give defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93 (2007)(internal citations and quotation marks omitted). In considering a motion to dismiss pursuant to Rule 12(b)(6), "[t]he court may only consider the pleading itself, documents

that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken." *Dowdy v. Hercules,* 2010 WL 169624, at *3 (E.D.N.Y. Jan. 15, 2010). Additionally, it is clear that the court may "rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including the public record of prior judicial decisions." *Jordan v. Verizon Corp.,* 2008 WL 5209989, at *5 (S.D.N.Y. Dec. 10, 2008) (Lynch, J.) (citing *Cameron v. Church,* 253 F. Supp. 2d 611, 617-18 (S.D.N.Y.2003)(additional citations omitted).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court revised the standards under which a complaint may withstand a motion to dismiss, finding that a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." 550 U.S. at 570. The court must still assume that well-pleaded factual allegations set forth in a complaint are true and draw all inferences in favor of the non-moving party (*see, e.g., Holmes v. Poskaner,* 342 Fed. Appx. 651, 652 (2d Cir. 2009)), but those factual allegations must be enough to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).*" Williams v. Berkshire Fin. Grp. Inc.*, 491 F. Supp. 2d 320, 324 (E.D.N.Y. 2007) (quoting *Twombly*, 550 U.S. at 545); *see also ATSI Communications, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007).

Subsequent to *Twombly,* the Supreme Court suggested a two-pronged approach to analyze the sufficiency of a complaint. *See Ashcroft v. Iqbal,* __ U.S. __ , 129 S. Ct. 1937, 1949-50 (2009). First, although for the purposes of a motion to dismiss the court must accept as true the factual allegations in the complaint, it is not "bound to accept as true a legal conclusion

couched as a factual allegation." *Id.* at 1949-50. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949.

Second, "a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson,* 2010 WL 308897, at *7 (2d Cir. Jan. 28, 2010)(quoting *Iqbal,* 129 S. Ct. at 1950). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 129 S. Ct. at 1949 (internal quotation marks and citations omitted). Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

With these standards in mind, I turn to the plaintiff's claims and the defendants' defenses.

**First Amendment Retaliation Claims:**

Silverstein alleges that his First Amendment rights of free speech, intimate and expressive association and political affiliation were violated in that he suffered an adverse employment action in retaliation for his exercise of those rights. The defendants argue that those claims must be dismissed as a matter of law, because Silverstein does not allege sufficient facts to set forth the elements of a First Amendment retaliation claim in the employment context: (1) that the plaintiff engaged in protected speech or another right protected by the First Amendment; (2) an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action, such that the speech was the motivating factor in the adverse employment decision. *Cotarelo v. Village of Sleepy Hollow Police Department,* 460 F.3d 247, 251 (2d Cir. 2006). The first factor further requires that a public employee plaintiff engaged in

free speech when he spoke as a citizen on a matter of public concern, not in his role as an employee. *See Anemone v. Metropolitan Transportation Auth.,* 629 F.3d 97, 114 (2d Cir. 2011). The Second Circuit has applied the First Amendment retaliation standard to claims involving intimate and expressive association rights in the public employment context. *See Adler v. Pataki,* 185 F.3d 35, 44 (2d Cir. 1999)(intimate association claim); *Wesolowski v. Bockelmann,* 350 Fed. Appx. 487, 489 (2d Cir. 2009). *Piscottano v. Murphy,* 511 F.3d 247, 273 (2d Cir. 2007) (expressive association claim); *Melzer v. Board of Educ.,* 336 F.3d 185, 196 (2d Cir. 2003) (expressive association in workplace). For the reasons set forth below, I recommend a finding that the First Amendment claims all be dismissed because the Amended Complaint fails to allege sufficient facts regarding factors one and three as to each of the claims.

I note, however, that I do not agree with the defendants' argument that there was no adverse employment action set out in the Amended Complaint. The test in determining whether an employment action is adverse in First Amendment retaliation cases is whether the alleged acts would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Dillon v. Morano,* 497 F.3d 247, 254 (2d Cir. 2007). Earlier Second Circuit cases had defined an adverse employment action as a "materially adverse change in the terms and conditions of employment." *Id.* (citations omitted). In *Dillon,* the Court explained that the standard for First Amendment cases is intended to be less demanding. *Id.* Silverstein alleges that termination of his job as Director of Guidance and the offer of the position of Supervisor of Pupil Personnel Services in its stead was an adverse employment action because it constituted a demotion in title and rank that would require him to report to a lower ranked person than the superintendent. Am. Compl. ¶31. Moreover, according to Silverstein, the new position

combined jobs previously held by two employees, so his workload would have been doubled. *Id.*, ¶32. Under these circumstances, I recommend a finding that the action was not, as the defendants urge, a "lateral transfer" without a change in salary or benefits, but an adverse action. *See* Board Defs. Reply Mem. at 6 (citing *White v. Fuji Film USA, Inc.,* 434 F. Supp. 2d 144, 152 (S.D.N.Y. 2006). Indeed, it meets both standards set out in *Dillon*. The other elements, however, are not adequately pled.

**Free Speech:** I find that the Amended Complaint does not allege that Silverstein engaged in any speech of his own and that his claim based on his First Amendment free speech rights should be dismissed. References to the speech or activities of others, including David Levey, do not suffice to make out a First Amendment claim based on Silverstein's rights. The Amended Complaint does not contain any factual assertions about Silverstein's speech, and the facts he seeks to add in the Proposed Second Amended Complaint cannot be considered on the motions to dismiss. Thus, claims alleging a violation of Silverstein's First Amendment free speech rights should be dismissed.

**Intimate Association:**

The right to intimate association protects an individual's right to enter into an intimate relationship free from undue intrusion by the state. *Sanitation & Recycling Indus., Inc. v. City of New York,* 107 F.3d 985, 996 (2d Cir. 1997)(citing *Roberts v. United States Jaycees,* 468 U.S. 609, 617-18 (1984)). To state an intimate association claim, the plaintiff must show that "the particular relationships at issue . . . are generally protected . . . under the circumstances alleged." *Patel v. Searles,* 305 F.3d 130, 136 (2d Cir. 2002). Here, the intimate relationship alleged by the plaintiff is presumably his friendship with Levey, which does not rise to the level of intimacy

12

contemplated in this right. The right protects relationships that "attend the creation and sustenance of a family - marriage, childbirth, the raising and education of children, and cohabitation with one's relatives." *Roberts,* 468 U.S. at 620. But the Constitution does not recognize a generalized right of social association *(see Sanitation & Recycling*, 107 F.3d at 996), and courts in the Second Circuit have not accepted intimate association claims based on friendships, however close. *See, e.g., Bates v. Bigger,* 192 F. Supp. 2d 160, 170 (S.D.N.Y. 2002), *aff'd*, 56 Fed. Appx. 527 (2d Cir. 2002) (sexual relationship not protected); *Berrios v. State Univ. of NY at Stony Brook*, 518 F. Supp. 2d 409, 418 (E.D.N.Y. 2007) ("Where, as here, the relationship sought to be protected falls outside the familial arena, it has been held to be not similarly protected."); *Dupont v. New Jersey State Police,* 2009 WL 2486052 (S.D.N.Y. Aug. 14, 2009)(no clearly established law protected friendship as a form of intimate association).

The plaintiff argues that although familial relationships are afforded the most vigorous protection, other intimate associations can be covered by the intimate association right, noting that "the trend in the law is for Courts to recognize relationships that fall at the intimate end of the spectrum." DE[22] at 9-10 (citing *Matusick v. Erie County Water Authority,* 2010 WL 2431077, *8 (W.D.N.Y. Feb. 22, 2010)). The plaintiff points to one court that has noted that "While it does not appear that the Supreme Court has explicitly extended the right of intimate association to close friends, such as [the plaintiff's girlfriend], it is a logical extension of the Court's prior precedent." DE[22] at 11 (citing *Steinback v. Branson,* 2007 WL 2985571, *15 n.10 (D. N.D. Oct. 9, 2007)). The plaintiff has pointed to no precedent, however, that would extend the right to a platonic friendship, even a long standing one of great intimacy. Thus, the claim based on the right of association should be dismissed.

**Expressive Association:**

The right to expressive association "protects the right of individuals to associate for purposes of engaging in activities protected by the First Amendment, such as speech, assembly, the exercise of religion, or petitioning for the redress of grievances" or "political association" rights. *Sanitation & Recycling,* 107 F.3d at 996-97. Expressive association claims are the equivalent of free speech claims, because the expressive conduct alleged is "inextricably linked to protected speech." *Illiano v. Mineola U.F.S.D.,* 585 F. Supp. 2d 341, 355 (E.D.N.Y. Nov. 7, 2009)(internal citations omitted). Here, the expressive association claim is duplicative of the free speech claim. *See De Fabio v. East Hampton U.F.S.D.,* 658 F. Supp. 2d 461, 484-85 (E.D.N.Y. 2009)(citing *Illiano,* 585 F. Supp. 2d at 355). As noted above in the discussion of Silverstein's free speech rights, he has not alleged that he engaged in any expressive activities or that he was involved in a political group with Levey. Silverstein's friendship with Levey and his work-related discussions with Fitzsimons do not give rise to an expressive association claim and that claim should be dismissed.

**Political Affiliation:**

The First Amendment guarantees public employees the right to associate with a political party and to express political views without retaliation from the employer. *Elrod v. Burns,* 47 U.S. 347, 356 (1976); *Cotarelo,* 460 F.3d at 253. The Amended Complaint does not overtly allege that Silverstein engaged in political activity or held any particular political beliefs or associated with any particular political group, at least in the traditional meanings of the word "political." Silverstein argues that within the Lawrence School District, there are two "political" factions - Orthodox and non-Orthodox- and that he engaged in political activity by agreeing with

the views of the non-Orthodox faction. I agree that the two factions could be considered "political" for purposes of a First Amendment claim, but there are insufficient factual allegations in the Amended Complaint to allow a political affiliation claim to stand. Although the Amended Complaint alleges the existence of the two points of view, it does not allege activities by Silverstein that rise to the necessary level of political activity. As the defendants argue, it is not enough that the Amended Complaint alleges that Silverstein was "perceived as" anti-Orthodox." *See* DE[21] at 13-14. The extent to which the proposed Second Amended Complaint supportsa political affiliation claim is discussed *infra*. Any political affiliation claim in the Amended Complaint, however, should be dismissed.

**Equal Protection Claim:**

The Amended Complaint asserts that the defendants violated Silverstein's equal protection rights, without further elaboration. *See* Am. Comp. ¶54(d). To succeed on an equal protection claim, plaintiffs must show both "(1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Broich v. Incorporated Village of Southampton,* 2011 WL 284484, *9 (E.D.N.Y. Jan. 25, 2011)(internal citations omitted). To be "similarly situated," the individuals with whom the plaintiff attempts to compare himself must be similarly situated in all material respects and have engaged in comparable conduct. *Id.* (internal citations and punctuation omitted).

The Amended Complaint nowhere mentions similarly situated individuals and it is not possible to infer from that document who the similarly situated individuals might be. In his

opposition papers, Silverstein argues that the defendants treated him differently from similarly situated individuals "because of impermissible consideration of [his] religious beliefs, which [are] characterized to be 'anti-Orthodox' intimate associations, expressive associations and his political associations." DE[22] at 18. The reasonable inference to be drawn from the Amended Complaint, however, is that "anti-Orthodox" is intended to indicate a political and not a religious position, and is a kind of shorthand for describing a group of people who disagree with the viewpoints of the Orthodox members of the Board relating to how the school district should be run. One's opinion about the closing of elementary school 6 is not a religious belief. I note in this regard the unfortunate use of the inflammatory term "anti-Orthodox," which does suggest a religious bias rather than a political one. In the Amended Complaint, it is Superintendent Fitzsimons who allegedly used that term to describe the Board's thoughts about Silverstein, not Silverstein himself. Thus, Silverstein is not claiming that he was treated differently based on his religious beliefs, but on the basis of his disagreement with budgetary decisions and he has not alleged, or even suggested, what similarly situated people he was treated differently from.

To the extent, if any, that Silverstein[8] intends a class-of-one equal protection argument, the claim still must fail. Class of one equal protection claims are not cognizable in the public employment context. *See Engquist v. Oregon Dep't of Agriculture,* 553 U.S. 591, 128 S. Ct. 2146, 2156 (2008); *see also Massi v. Flynn*, 353 Fed. Appx. 658, 660 (2d Cir. 2009). Even if they were, such a claim would fail here. The requirements for a class of one allegation have recently been revisited by the Second Circuit in *Ruston v. Town Board for the Town of Skaneateles,* 2010 WL 2680644 (2d Cir. July 8, 2010). In *Ruston*, the Court noted that district

_____

[8]Both defendants' motions address the class of one issue, but Silverstein does not.

16

courts in this Circuit have differed as to the impact of the new *Iqbal* pleading standards on class

of one claims.  *Id.,* *2.  It attributed the uncertainty to a tension between the decision in *DeMuria*

*v. Hawkes,* 328 F.3d 704, 707 (2d Cir. 2003), "which held under a now-obsolete pleading

standard that a 'class of one' claim is adequately pled ('albeit barely' so) even without

specification of others similarly situated, and the Supreme Court's recent clarifications which

require that a complaint allege facts sufficient to establish a 'plausible claim for relief.'" *Id.*

(citing *Iqbal*, 129 S. Ct. at 1950 and *Twombly*, 550 U.S. at 566).   The Court resolved the tension

by holding that the *Iqbal* pleading standard "supersedes the 'general allegation' deemed adequate

in *DeMuria*."  *Id.* at *3.  *Ruston* also reinforced the requirement that class of one plaintiffs must

plead facts showing an extremely high degree of similarity between themselves and the persons

to whom they compare themselves, and, where they fail to do so, their claim must fail. The

Amended Complaint identifies no similarly situated individuals, let alone comparators with a

high degree of similarity, nor can such individuals be inferred.  For all these reasons, the Equal

Protection claim should be dismissed.

**Qualified Immunity:**

All of the individual defendants argue that they are entitled to qualified immunity, which

extends to public officials sued in section 1983 actions for acts undertaken in their official

capacity, unless their conduct violates clearly established constitutional rights of which an

objectively reasonable official would have known.  Qualified immunity is an immunity from suit

rather than a mere defense to liability and is effectively lost if the case is erroneously permitted to

go to trial.  *Mitchell v. Forsythe,* 472 U.S. 511, 526 (1985).  The "initial question with respect to

qualified immunity is whether, viewing the facts alleged in the light most favorable to the

Plaintiff, there was a constitutional violation." *Fierro v. City of New York*, 2009 WL 2223067, *1 (2d Cir. July 27, 2009). As explained *supra*, viewing the facts in the Amended Complaint in the light most favorable to Silverstein, there were no constitutional violations and all of the claims must be dismissed, so the qualified immunity defense need go no further as to the allegations in the Amended Complaint. I do note, however, that even if my Recommendation regarding the right to intimate association is not adopted and the right is extended to a platonic friendship, qualified immunity should apply, because such a right was far from "clearly established." *See Dupont,* 2009 WL 2486052 at *9(no clearly established law in 2006 and 2007 protecting friendship as form of intimate association).

The application of qualified immunity principles to the Proposed Second Amended Complaint is discussed *infra*.

## Motion to Amend

### Standards for Motion to Amend

Rule 15(a) of the Federal Rules of Civil Procedure provides, in pertinent part, that "a party may amend [its] pleading . . . by leave of court," and that "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *see also Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In making its determination, the court considers factors such as undue delay, prejudice to the defendants, and futility of the proposed amendments. *See Foman*, 371 U.S. at 182; *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 157 F.3d 956, 962 (2d Cir. 1998); *Harrison v. NBD, Inc.*, 990 F. Supp. 179, 185 (E.D.N.Y. 1998). Although amendments are generally favored because "they tend to facilitate a proper decision on the merits," *Blaskiewicz v. County of Suffolk*, 29 F. Supp. 2d 134, 137 (E.D.N.Y.

1998) (citation omitted), ultimately, "it is within the sound discretion of the court whether to grant leave to amend." *John Hancock Mut. Life Ins. Co.v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) (*citing Foman*, 371 U.S. at 182).

Amendment should only be denied for good reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Ruotolo v. City of New York,* 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman,* 371 U.S. at 182). An amendment is futile if the claim would be unable to withstand a Rule 12 (b)(6) motion to dismiss. *See Lucente v. Int'l Bus. Machines Corp.,* 310 F.3d 243, 258 (2d Cir. 2002). Indeed, "[t]he standard for futility with respect to a motion to amend under Rule 15 is identical to the standard for a Rule 12 (b)(6) motion to dismiss - namely, the court must determine whether the allegations in the complaint state a claim upon which relief can be granted." *Amna v. New York State Dep't of Health,* 2009 WL 6497844, at *1 (E.D.N.Y. Sept. 3, 2009) *(quoting Crippen v. Town of Hempstead,* 2009 WL 803117, at *1 n.1 (E.D.N.Y. Mar. 25, 2009)).

Here, the plaintiff has cross-moved for permission to file a second amended complaint to add factual allegations in paragraphs 23 through 26 that connect the plaintiff to the "non-orthodox" groups in Lawrence. The defendants oppose the amendments on various grounds, including undue delay and futility. I do not agree that the motion is untimely, but find that a number of the claims are futile. Nothing in the Proposed Second Amended Complaint changes the grounds for dismissing the First Amendment intimate association claim or the equal protection claim and the free speech claim and expressive association claim are duplicative under

the circumstances newly alleged.  Thus, I recommend that the intimate association and equal protection claims be stricken from the proposed Second Amended Complaint.  The proposed allegations do, however, provide a basis for the other First Amendment claims - either free speech or expressive association, and the claim based on political affiliation.

As noted earlier, I find that groups that are publicly "pro" or "con" school board activities and decisions are reasonably considered political for First Amendment purposes and Silverstein adequately alleges that he was personally active in a group that was opposed to some or all of the defendant Board's decisions.  In that context, he attended meetings, handed out flyers, publicly supported non-Orthodox candidates and made his opposition to the closing of school number 6 known to at least one Board member, Mandsdorf.  The allegations place Silverstein squarely in the "non-Orthodox" camp and remove the objections to his claims based on the argument that he was merely "perceived" as being in such a group.

The Board defendants argue that these claims are futile because nothing in the proposed complaint asserts that they were aware of Silverstein's activities and that there is thus no causal connection between the employment actions and his activities.  *See* Board Defs. Reply Mem. at 8-9. While there is no one sentence in the proposed complaint that sets forth an allegation of that awareness, the proposed complaint and all of the inferences fairly drawn from it adequately allege knowledge on the part of the defendants.  Those inferences can be drawn from Fitzsimon's alleged statements as early as November 2008 that the Board and its members saw Silverstein as "anti-Orthodox," and from his meeting with Mandsdorf in April 2009.  While not every defendant may have known of every activity now alleged by Silverstein, discovery will allow the parties to learn the extent of actual awareness and the proposed complaint sets forth a claim plausible on its

face that Silverstein's job was terminated and that he was offered a new job that constituted an adverse employment action because he was allied with a "non-Orthodox" group.

Fitzsimons argues that the amendments are futile as to him because they do not attribute any unconstitutional actions to him. DE[29] at 8-10. While the allegations against Fitzsimons do consist largely of his alleged reports about the Board's attitude toward Silverstein, it is also alleged that it was Fitzsimons who recommended that Silverstein's position as Director of Guidance be abolished. *See* DE[27], Arntsen Decl., Ex. C. The court cannot, at this stage of the litigation, accept Fitzsimon's and the other defendants' claim that it was abolished as a cost-saving, budgetary step. Discovery will show what the motivation or basis was for that step and I recommend a finding that the proposed complaint sets forth enough allegations against Fitzsimons to avoid dismissal.

Finally, I do not find that qualified immunity has been shown at this stage except as to the intimate association claim, as discussed *supra*. The free speech and political affiliation claims adequately pleaded in the Proposed Second Complaint are based on clearly established constitutional rights of which an objectively reasonable official would have known.

## OBJECTIONS

A copy of this Report and Recommendation is being filed by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver,* 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir.

1996).

Dated: Central Islip, New York
      February 16, 2011

                               /s/ William D. Wall

                               WILLIAM D. WALL
                               United States Magistrate Judge